IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 08-cv-01404-RPM-KMT

VICTORIA HALL,

Plaintiff,

v.

BREDE EXPOSITION SERVICES d/b/a
BREDE-COLORADO,

Defendant.

---

**PLAINTIFF'S BRIEF IN RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, Victoria Hall, through her attorney, respectfully submits Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment.

**INTRODUCTION**

Victoria Hall brought this action against her former employer, Brede-Colorado, Inc., asserting claims for employment discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).and 42 U.S.C. §1981. Ms. Hall has African ancestry and her skin color is black. Ms. Hall worked for Brede-Colorado from June, 1999 until her termination in November, 2006. Brede-Colorado has presented evidence that its reason for terminating Ms. Hall's employment was not based on race but rather was due to its decision to eliminate her position as customer service manager in order to save money.

Ms. Hall does not dispute that Brede-Colorado had a decrease in business in 2005 and 2006. However, the manner in which Brede-Colorado decided to eliminate Ms. Hall's position

as part of its reduction in force raises genuine issues of fact about whether Brede-Colorado's explanation is a pretext for race discrimination. There are six principal areas of evidence of pretext:

1. Brede-Colorado eliminated Ms. Hall's position without considering elimination of other similar positions.
2. Brede-Colorado terminated Ms. Hall and retained a recently hired white employee to perform similar duties.
3. Brede-Colorado's restructuring in 2006 resulted in the termination of all the black employees who worked in the office.
4. Brede-Colorado hired five customer service representatives during the time it was assessing the reduction of its customer service staff. It then reduced its staff levels by terminating its most experienced customer service employee who is black.
5. Brede's descriptions of its reasoning are inconsistent and contradictory.
6. Brede attempts to justify its decision to terminate Ms. Hall with an inaccurate characterization of the types of work she performed for the company.

**PLAINTIFF'S RESPONSE TO BREDE-COLORADO'S STATEMENT OF FACTS**

Plaintiff agrees that a number of the facts described by Brede-Colorado are undisputed. Others, however are not. Plaintiff's positions on Brede-Colorado's factual statements are listed using the paragraph numbers from Brede's opening brief.

1. Undisputed.
2. Undisputed.
3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Incomplete. Brede-Colorado, Inc. is affiliated with several other companies that use the Brede name and provide trade show services. These companies (the Affiliated Brede Companies) are owned by members of the Casey family and include Casey & Hayes, Inc. (d/b/a Brede-Boston), Brede-Colorado, Inc., Brede-Arizona, Inc., Brede, Inc (d/b/a Brede-Minneapolis), Brede National and Brede-Washington. William Casey depo 7:11 to 8:2[1]. The Affiliated Brede Companies collectively have about 5,400 employees, with 400 working full time. William Casey depo 12:10 to 13:3. The Affiliated Brede Companies not only have common ownership, they also have the same 401(k) plan for their nonunion employees, receive payroll and accounting services from the same firm, and have a common liability insurer. William Casey depo 16:17 to 17:22. Brede-Colorado relies on an affiliate to have checks issued, obtain information technology, and secure medical insurance. Mather depo 16:6 to 16:23. Brede-Colorado pools its profits with the Affiliated Brede Companies. Mather depo 46:1 to 46:20. William Casey was the president of Brede-Colorado in 2006. Tim Casey was a director of Brede-Colorado in 2006. William Casey depo 10:1 to 10:8. Pamela Mather was the general manager of Brede-Colorado and reported to William Casey. Mather depo 10:13 to 10:19. Ms. Mather consulted with William Casey about employee termination decisions. Mather depo 16:24 to 17:2.

7. Undisputed.

---

[1] The depositions of Victoria (Hall) Petty, Pamela Mather, Bill Kuhnlein and William Casey as well as deposition exhibits 4, 5, 11, 21, 27, 28, 30 and 32 were submitted with defendant's brief in support of the summary judgment motion. In accordance with D.C.COLO.LCivR 56.1(c)(2), those materials are not submitted with this brief.

8. Plaintiff does not dispute that she was promoted by Ms. Mather in 2002 to Customer Service Manager. Plaintiff disputes that she primarily worked on traveling shows outside of Colorado. The types of shows to which Ms. Hall was assigned are discussed more fully in ¶28, below.

9. Undisputed.

10. Undisputed.

11. When Ms. Hall was offered the position of junior account executive, she had prior sales experience including retail sales and sales for Frito Lay. Hall depo 224:14 to 225:5.

12. Ms. Hall disputes Brede-Colorado's characterization of Ms. Hall's work on shows generated by other offices as being unprofitable for Brede-Colorado. When Ms. Hall worked on shows generated by offices other than Brede-Colorado, her office was reimbursed for her time and expenses. According to Brede-Colorado's president, William Casey, the intent was for Brede-Colorado to profit equally whether Ms. Hall worked on a show generated by the Colorado office or one of Brede's other offices. William Casey depo 18:22 to 19:9.

13. It is undisputed that Ms. Hall received an employee handbook that contained a nondiscrimination policy. The handbook requested that employees with concerns about discrimination call William Casey to report their concerns. In addition, however, Ms. Hall received a memo from her supervisor Pamela Mather directing employees of Brede-Colorado not to report concerns to Brede's corporate office. Ms. Mather stated "[n]o one has the right to call anyone in corporate…you report to a GM and I report to them. If you recall Sam got fired for calling Tim Casey!!!!!" Mather depo 74:12 to 75:5 and deposition exhibit 26 (attached as exhibit 1). Tim Casey was a director of Brede-Colorado. William Casey depo l0:6 to 10:8.

After she was fired, Ms. Hall made repeated attempts to contact Brede-Colorado's president William Casey. He would not return her calls. William Casey depo 35:17 to 36:13.

14. Undisputed.

15. Undisputed, except that Ms. Mather began looking for ways to reduce Brede-Colorado's expenses and began considering customer service layoffs by early 2005. Mather depo 133:21 to 134:5.

16. Undisputed.

17. Disputed. LaTanya Waines and Ms. Hall were the only two black employees who worked in Brede-Colorado's office. Both their jobs were eliminated in 2006 with office restructuring. Mather depo 82:23 to 83:10. Ms. Mather undertook the restructuring of Ms. Waines's receptionist position with the expectation that it would force Ms. Waines to quit. Hall depo 210:4 to 210:17. Ms. Waines did resign on May 2, 2006 after her hours were reduced. Mather depo 119:7 to 119:11 & Deposition Exhibit 40 (attached as exhibit 2). There is evidence that Ms. Mather had been hoping since November 2005 that Ms. Waines would quit. Mather depo 116:14 to 118:24.

18. Undisputed.

19. Ms. Hall does not dispute that Ms. Mather in November 2006 eliminated Ms. Hall's Customer Service Manager position with the approval of William Casey and that since that time, Brede has not hired a new Customer Service Manager. As described in the discussion of additional material facts below, Ms. Hall does dispute the characterization of the shows on which she worked and Ms. Mather's reasons for eliminating the position.

20. Undisputed.

## ADDITIONAL MATERIAL FACTS

The following additional facts are relevant to the motion for summary judgment.

21. At the time Ms. Hall was fired, she was the most experienced customer service employee at Brede-Colorado. Kuhnlein depo 7:25 to 8:4.

22. Ms. Hall had a "commitment to provide superior performance," "earned the respect of Account Executives and managers throughout [Brede and]" and was "dedicated to teamwork." Smith depo 23:10 to 23:18 & deposition exhibit 32.

23. Although Ms. Hall had the title of Customer Service Manager, she continued to perform the same tasks as the other customer service representatives. Kuhnlein depo 7:19 to 7:24. Even as a manager, most of her duties involved providing customer service. William Casey depo 33:4 to 33:8.

24. Brede-Colorado's president, William Casey, believes that the appropriate way for Ms. Mather to assess layoffs is to look at all positions for layoffs before deciding what job to eliminate. William Casey depo 27:15 to 28:1.

25. Ms. Mather doesn't recall discussing the elimination of other customer service positions at Brede-Colorado before she decided to eliminate Ms. Hall's position. Mather depo 58:3 to 58:7.

26. Ms. Mather had the impression that Ms. Hall was having trouble filling her work hours, but does not recall actually checking Ms. Hall's hours before deciding to terminate her. Mather depo 65:16 to 66:13.

27. During 2006, up to the time of her termination in November, Ms. Hall had worked 413 1/2 hours of overtime. Mather depo 69:3 to 70:23.

28. Ms. Hall worked on shows in Colorado, out of town shows that were sold by Brede-Colorado, and shows sold by offices other than Brede-Colorado. Deposition exhibit 33 (attached as exhibit 3) is the Brede-Colorado record of the customer service representatives who worked on various tradeshows. Mather depo 93:7 to 105:14. Exhibit 33 shows that Ms. Hall worked on 14 trade shows both sold by Brede-Colorado and held in Colorado in 2004, 14 in 2005 and 16 in 2006. She worked on shows either held outside of Colorado or sold by offices other than Brede-Colorado an average of nine times per year during that period.

29. Between 2004 and 2006, the number of national shows on which Ms. Hall worked that were generated outside the Brede-Colorado office remained stable. Smith depo 13:6 to 13:12.

30. Although Brede-Colorado now contends that Ms. Hall was working few shows in Colorado in 2006, when Ms. Mather decided to fire Ms. Hall, Ms. Mather did not know what portion of the local shows Ms. Hall was handling. Mather depo 66:20 to 66:24.

31. Brede-Colorado's restructuring in 2006 resulted in the termination of all the black employees who worked in the office. Mather depo 82:23 to 83:10.

32. In 2006 Brede-Colorado also fired account executive Bill Spadi after he failed a drug test, not because of a need to restructure the Brede-Colorado office. Mather depo 86:9 to 86:22.

33. By at least early 2005 Brede-Colorado had identified the need to trim its customer service staffing. Mather depo 133:21 to 134:5.

34. After the need to reduce customer service staffing was identified, Brede-Colorado hired a series of five customer service representatives. Mather depo 136:15 to 136:20.

35. The five customer service representatives were Margarita Pineda (January 2005), Kimberly Sewell (October 2005), Emily Ewing (January 2006), Jordan Pult (February 2006), and Megan Whiteman (October 2006). Mather depo 134:6 to 136:2.

36. After considering reductions in the customer service staff and hiring five different customer service representatives, Brede-Colorado finally decided to reduce its staffing levels by firing the only black employee in the customer service department. Mather depo. 35:21 to 36:9. Brede-Colorado chose to retain the two white employees in its customer service department. *See* Hall's answer to interrogatory 9 (attached as exhibit 4).

37. Ms. Whiteman was hired as a customer service representative about three weeks before Ms. Hall was fired. Hall depo 70:1 to 70:4. Ms. Whiteman as a new customer service representative was paid $15 per hour. Mather depo 106:14 to 106:17. Ms. Hall as the customer service manager with seven years of experience with the company was paid $16.05 per hour. Mather depo 71:7 to 71:11.

38. William Casey approved Ms. Mather's decision to fire Ms. Hall. William Casey depo 24:14 to 24:17. Mr. Casey and Ms. Mather are inconsistent in their beliefs about Ms. Hall's performance. Mr. Casey approved of the termination because he thought there were both economic justifications and that Ms. Hall had performance problems. William Casey depo 33:9 to 34:3. Mr. Casey recalls Ms. Mather telling him that she had warned Ms. Hall repeatedly about performance problems. William Casey depo 33:34 to 34:3.

39. In contrast, Ms. Mather testified that Ms. Hall did not have a performance problem. Mather depo 57: 12 to57:16.

40. At the time of Ms. Hall's termination, Ms. Hall asked Ms. Mather if she could continue to work for Brede-Colorado as a customer service representative. Ms. Mather said it was not up for discussion. Mather depo 40:12 to 40:20.

41. William Casey testified that "[w]e eliminated [Ms. Hall's] position, and she was laid off. She definitely was not terminated." William Casey depo 23:15 to 23:20. When an employee is laid off, Brede would customarily contact them when work became available again. William Casey depo 24:1 to 24:10.

42. Brede placed an ad seeking applicants for a customer service representative after Hall was fired. Hall depo 221:12 to 221:15.

43. Brede-Colorado advised the EEOC that when she was fired Ms. Hall told Ms. Mather that she did not want to take a pay cut in order to continue as a customer service representative for Brede. Mather depo 126:5 to 130:2 & deposition exhibit 44 p 3 (attached as exhibit 5). The persons present at the termination meeting were Ms. Mather, Ms. Hall and Mr. Kuhnlein. None of them recall such a discussion. Mather depo 129:22 to 130:2, Kuhnlein depo 11:4 to 11:7; Hall depo 218:10 to 219:20.

## ARGUMENT

### A. Ms. Hall has Established a Prima Facie Case of Employment Discrimination.

Ms. Hall has established a prima facie case of race discrimination. The required elements of a prima facie case of intentional race discrimination involving a reduction in force are: (1) plaintiff was within the protected group, (2) plaintiff was doing satisfactory work, (3) plaintiff was discharged despite the adequacy of her work, and (4) there is some evidence that the employer intended to discriminate against the plaintiff in reaching its RIF decision. *Juarez v.*

*ACS Government Solutions Group, Inc.*, 314 F.3d 1243, 1245-46 (10th Cir. 2003). The fourth element can be satisfied by showing that the employer could have retained plaintiff but instead chose to keep someone of a different race. *Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159, 1167 (10th Cir. 1998), *cert. denied*, 525 U.S. 1054 (1998).

There is no dispute regarding the first element of Ms. Hall's *prima facie* case. Ms. Hall is a black person of African heritage and is a member of a protected class. *Additional facts* ¶36. Ms. Hall has presented evidence regarding the second element that she was doing satisfactory work for Brede-Colorado. *Additional facts* ¶¶ 22 & 39. There is no dispute about the third element of the prima facie case—Ms. Hall was discharged. *Statement of facts* ¶19. With regard to the fourth element, Ms. Hall has presented evidence that she could have been retained but Brede-Colorado chose to retain someone of another race. *Additional facts* ¶36. Ms. Hall has presented evidence in support of each element of her *prima facie* case.

**B. Ms. Hall has Presented Evidence of Pretext.**

When the plaintiff establishes *a prima facie* case the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant makes this showing, the plaintiff must then prove "by competent evidence" that the defendant's justification of its decision is a pretext. *McDonnell Douglas,* 411 U.S. at 805. Pretext may be established by a wide variety of circumstantial evidence.

Termination of a minority employee with greater experience than Caucasian employees who were retained may be evidence of race discrimination. *Juarez v. ACS Government Solutions Group*, 314 F.3d 1243, 1246 (10th Cir. 2003).

When an employer gives shifting or inconsistent reasons for discharging a minority employee, it may be evidence of pretext. *Id.* Inconsistent statements regarding the role that performance played in a termination decision are probative of pretext. *Edwards v. Liberty National Bank & Trust Co.*, 89 F.3d 849 (Table), 1996 WL 353784, *3 (10th Cir. 1996)(unpublished). It is evidence of pretext when an employer tells the EEOC during the administrative investigation that performance was a factor in the decision to eliminate the job of a minority employee and later concedes that it was not. *Miller v. Eby Realty Group LLC,* 396 F.3d 1105, 1112 (10th Cir. 2005).

A plaintiff may show pretext "by providing evidence that he was treated differently from other similarly situated, nonprotected employees." *Green v. New Mexico,* 420 F.3d 1189, 1194 (10th Cir. 2005) (citation omitted). Plaintiff can also show pretext through "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999).

It is circumstantial evidence of discrimination when an employer is aware of the need for a reduction in force, hires Caucasian employees and then eliminates the job of an employee in a protected class. *Smith v. Aquila, Inc.*, 229 S.W.3d 106, 119 (Mo. App. 2007). A reduction in force that eliminates the position of all the employees in a protected group yet retains all the Caucasion employees may be evidence of pretext. *E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1053 (9th Cir. 2009)("the inexorable zero" minority employees who remained in the department after the RIF is probative of pretext).

"When a 'reduction-in-force' includes only one employee—and the one employee is a member of a protected class—this is some evidence of pretext." *Aludo v. Denver Area Council*, 2008 WL 3480079, *5 (D. Colo. 2008)(Babcock, J.).

When a company eliminates the position of a minority employee without following an unwritten policy or company practice it may be evidence of pretext. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Ms. Hall has presented substantial evidence that Brede-Colorado's explanation for her employment termination is a pretext.

*1. Brede-Colorado's elimination of Ms. Hall's position without considering elimination of other similar positions is evidence of discrimination and pretext.* William Casey testified that there should have been an assessment of elimination of all positions within the company before a decision was made to terminate Ms. Hall. *Additional facts* ¶24. Ms. Mather does not recall discussing such an assessment with Mr. Casey. *Additional facts* ¶25. This failure to follow its own informal policies before firing Ms. Hall is evidence of pretext. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

*2. Brede-Colorado's termination of Ms. Hall and retention of Ms. Megan Whiteman is evidence of pretext.* Ms. Hall who is black had been a Brede-Colorado employee for seven years when she was fired. *Statement of facts* ¶ 7 & 19. Defendant eliminated Ms. Hall's position and retained Megan Whiteman as a customer service representative. Ms. Whiteman had been employed by the company for a few weeks. *Additional facts* ¶ 37. Ms. Hall is black. Ms. Whiteman is white. *Additional facts* ¶ 36. This is evidence of pretext. *Juarez v. ACS Government Solutions Group, Inc.*, 314 F.3d 1243, 1246 (10th Cir. 2003).

*3. Brede-Colorado's restructuring in 2006 which resulted in the termination of all the black employees who worked in the office is evidence of discrimination and pretext.* Brede-Colorado's 2006 restructuring resulted in the departure of both the black employees working in the office. *Additional facts* ¶31. Restructuring that eliminated all the black office employees is evidence of pretext. *E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1053 (9th Cir. 2009).

*4. Brede-Colorado's restructuring by hiring five customer service representatives and then eliminating the position of its only black customer service employee is evidence of pretext.* After Ms. Mather became aware of the need to restructure the customer service department, she hired a succession of five customer service representatives. She then reduced the size of the customer service department by firing its only black employee. *Additional facts* ¶¶33-37. This is evidence of pretext. *E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1053 (9th Cir. 2009); *Smith v. Aquila, Inc.,* 229 S.W.3d 106, 119 (Mo. App. 2007).

*5. Brede-Colorado's inconsistent and contradictory descriptions of its reasoning are evidence of discrimination and pretext.* Brede-Colorado informed the EEOC that Ms. Hall was unwilling to take a pay cut to perform the duties of a customer service representative rather than a customer service manager. In truth, the issue was never discussed because Ms. Hall was informed she could not stay with the company after her position was eliminated. *Additional facts* ¶ 43. Brede-Colorado has also been inconsistent in its statements about whether Ms. Hall's performance was one reason for the elimination of her position. *Additional facts* ¶¶ 38 & 39. Ms. Mather concluded that Ms. Hall was not busy with work, despite Ms. Hall's 413 1/2 hours of overtime in 2006. *Additional facts* ¶ 27. Ms. Mather insists that Brede-Colorado did not profit from Ms. Hall's work on shows generated by other Brede offices. William Casey testified that

the two types of shows are equally profitable to Brede-Colorado. *Additional facts* ¶12. These inconsistencies are evidence of pretext. *Juarez v. ACS Government Solutions Group*, 314 F.3d 1243, 1246 (10th Cir. 2003); *Edwards v. Liberty National Bank & Trust Co.* 89 F.3d 849 (Table), 1996 WL 353784, *3 (10th Cir. 1996)(unpublished).

*6. Brede-Colorado's attempts to justify Ms. Hall's termination with an inaccurate characterization of the types of work she performed for the company is evidence of discrimination and pretext.* Brede-Colorado attempts to paint Ms. Hall as having a position entirely unique from that of the other customer service representatives. In fact, Ms. Hall had some management duties but spent most of her time providing direct customer service. She worked out of town shows, but she also worked on more shows in Colorado. Her compensation was similar to others in the customer service department. *Additional facts* ¶¶ 28, 29, 30 & 37, deposition exhibit 33. These inaccuracies support an inference of pretext. *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999).

**C. A Same Actor Inference is Entitled to Little Weight in This Case.**

Defendant asserts that because Ms. Mather both hired and fired Ms. Hall, there can be no inference of discrimination. Brede overstates the application of the "same actor inference" to this matter. The law in the Tenth Circuit is explained in *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006):

> in cases where "the employee was hired and fired by the same person within a relatively short time span," there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual." … We emphasize, however, that "[t]he plaintiff still has the opportunity to present countervailing evidence of pretext," *id.,* and that "same actor" evidence gives rise to an inference, rather than a presumption, that no discriminatory animus motivated the employer's actions.

The *Antonio* court discussed what period constitutes a relatively short time span and cited cases in which some inference was found with time spans of eight days, three months, six months, eleven months, one year and four years. *Id.* at 1183 n. 4. In Ms. Hall's case, she was hired over seven years before she was fired by Brede-Colorado. The seven year interval is substantially longer that any period the Tenth Circuit has considered a "relatively short time span."

During the seven years between the time she was hired and fired, Ms. Hall did not receive especially favorable treatment from Ms. Mather. For example, in 2006, she received a 2.5% raise from $15.65 to $16.05 per hour. Mather depo 70:25 to 71:11 & depo exhibit 24 (attached as exhibit 6). This raise does not appear particularly complimentary when compared to the $15.00 per hour starting salary for Megan Whiteman who was Ms. Hall's subordinate. Mather depo 106:14 to 106:17. Similarly, Ms. Hall's promotion to Customer Service Manager was not especially meaningful according to Ms. Mather. Ms. Mather testified that Ms. Hall's designation as a manager was primarily a reflection of the fact that she traveled to national shows. Ms. Mather remained very involved in the customer service department. Referring to Ms. Hall, Ms Mather testified that "[m]anagement might have been a strong term for what she was allowed to do." Mather depo 23:24 to 24:25. If any same actor inference could be drawn from Ms. Mather's role in hiring, supervising and then firing Ms. Hall over seven years later, the inference would be extremely weak.

## CONCLUSION

Ms. Hall has submitted evidence of a prima facie case of employment discrimination on the basis of race. Brede-Colorado has presented a nondiscriminatory basis for the employment termination. Ms. Hall has in turn offered substantial evidence that Brede-Colorado's explanation

is pretext. Because of the factual disputes involved with this evidence, the case should not be resolved on summary judgment. Therefore, plaintiff respectfully requests that the Court deny defendant's motion for summary judgment.

**RESPECTFULLY SUBMITTED,**

Us/ *Dale A. Gaar*
Dale A. Gaar
1600 Stout St., Suite 1000
Denver, CO 80202
(303) 446-9300
Fax: (303) 446-9400
gaar@qwest.net
Attorney for Plaintiff Victoria Hall

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 23, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

khodge@scmllp.com
gbok@scmllp.com

*s/ Dale A. Gaar*
Dale A. Gaar
1600 Stout Street, Suite 1000
Denver, CO 80202
Telephone: (303) 446-9300
FAX: (303) 446-9400
Email: Gaar@qwest.net
Attorney for Plaintiff Victoria Hall